CUTNAW, Plaintiff, v. COLUMBUS (City), Defendant.

Municipal Court, Columbus.

No. 41106.   Decided February 28, 1958.

Guy Martin, Columbus, for plaintiff.

Russell J. Leach, City Attorney, Alba Whiteside, Asst. City Atty., Columbus, for defendant.

## OPINION

By SCHWARZWALDER, J.

This matter comes before the Court on a motion by the defendant, The City of Columbus, for judgment notwithstanding the verdict heretofore rendered by the jury. The plaintiff, Walter R. Cutnaw, filed suit against the City of Columbus to recover damages sustained to his automobile while it was parked in the Long Street parking garage, a city owned garage.

The facts briefly stated are as follows: The plaintiff was the owner of a 1951 Oldsmobile and on May 4, 1956, plaintiff delivered his automobile to the Long Street garage. Upon his return he was informed

that the car had been damaged while being parked in the garage by an attendant of the garage. It is stipulated that the attendant was an employee of the defendant and acting within the course of his employment at the time of the damage to the automobile. The plaintiff in his petition sets out three separate allegations of negligence on the part of the defendant. Various estimates of damage to the plaintiff's automobile were introduced in the evidence.

Plaintiff in his petition prayed for $535.00 in damages. The case was tried to a jury and the jury returned a verdict in favor of the plaintiff in the amount of $554.00. The plaintiff immediately moved for a remittitur to reduce the amount found by the jury to the amount prayed for in the petition. The defendant moved for a mistrial.

On February 25, 1958, an entry was made by the Court in writing on the half-sheet in the file of this case. Said entry ordered a remittitur in the amount of $254.00 and the plaintiff having accepted said remittitur, the Court rendered judgment for the plaintiff upon the verdict in the amount of $300.00 and costs. Subsequent to the filing of the above entry, a motion was filed by the defendant for judgment notwithstanding the verdict.

Counsel for the defendant in his memorandum in support of the motion for judgment, notwithstanding the verdict, bases his argument on two propositions—(A) that no evidence of negligence was proven by the plaintiff against the defendant, and (B) that assuming such negligence was proven, the operation of an off-street parking garage is a governmental function and that, therefore, the City is immune from liability for a tort committed in the operation of such governmental function.

As to Branch (A) of defendant's memorandum, the Court is of the opinion that from a reading of the entire record there was sufficient evidence adduced on the part of the plaintiff to require that the case be submitted to the jury on the question of the negligence of the defendant.

The question still remains—Is the operation of a City owned parking garage a governmental or proprietary function?

On two different occasions, legal questions involving the operation of the Columbus Long Street parking garage have been before the Ohio Supreme Court. In **State, ex rel. Gordon v. Rhodes, 156 Oh St 81,** the Supreme Court held that a municipal corporation may construct, operate and maintain an off-street parking garage. Unfortunately the Supreme Court did not decide the question as to whether or not in so operating a garage the City was exercising a governmental or proprietary function.

In **In re Exemption, 167 Oh St 256,** the Ohio Supreme Court held that real property acquired and used by a municipality for off-street parking purposes is not exempt from taxation. Again, the Court did not see fit to specifically say that the operation of a parking garage is a governmental or a proprietary function.

Counsel for defendant City argues with considerable vigor that in the Rhodes case, supra, the Supreme Court has at least strongly indi-

598

cated, if not decided, that the operation of the Columbus parking garage is a governmental function. To support this contention, he cites the following language in the body of the opinion:

"The modern trend of decision is to expand and liberally construe the term 'public use' in considering state and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function of capacity in which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private.

"The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and the determination of the legislative body of that matter should not be reversed except in instances where such determination is palpably and manifestly arbitrary and incorrect."

With this contention this Court cannot agree. That the Supreme Court was using the phrase "public or governmental purpose as distinguished from private" in relationship to the question of whether or not the City could build such a garage and not in relationship to tort or contract liability of the City, once the garage is built, is obvious from the language at the bottom of page 92, Oh St 156, which reads:

"In determining the existence of a public use or a public purpose the courts of Ohio have throughout our history been guided by definition or general understanding of the terms in harmony with the text quotations appearing above. Such decisions appear from the earliest date in condemnation proceedings, in cases testing the scope and meaning of corporation charters, and in cases involving the right of municipalities to perform certain challenged acts in the conduct of municipal government. The specific question now before this court has not previously arisen in this state."

Note that Judge Middleton does not once mention tort or contract liability, but discusses public purpose or governmental purpose as it relates to constitutional questions raised by the issuance of bonds to finance the building of the garage.

The Rhodes and the In Re Exemption cases cited above are not dispositive of the question before this court.

One of the "landmark" cases in the field of governmental v proprietary function is Wooster v. Arbenz, 116 Oh St 281. In that case Arbenz, the plaintiff, alleged that he was injured by reason of the automobile driven by him coming in collision with a truck owned and operated by the City of Wooster; the truck at the time being engaged in hauling cinders for the repair of Lincoln Street in that city. The Supreme Court held in the Syllabus as follows:

1. Streets and highways are public and governmental institutions, maintained for the free use of all citizens of the state, and municipalities while engaged in the improvement of streets are engaged in the performance of a governmental function.

2. Sec. 3714 GC. imposes upon municipalities the obligation to keep streets, alleys, and other highways within the municipality open, in repair, and free from nuisance; the legislation imposing this duty in an

exercise of the sovereignty are subject to the liability which follows a failure to discharge that duty.

3. The duties and obligations thus imposed are in derogation of the common law and must therefore be strictly construed, and the provisions of that legislation cannot by implication or interpretation be extended to make a municipality liable for the negligence of its servants while engaged in the act of making improvements to streets, unless such negligence relates to a condition of the street itself and the damage is caused by a defective condition thereof.

Further in attempting to lay down rules for determination of whether or not a city is liable in tort for the negligence of its servants or agents, Judge Marshall stated as follows:

"This court is for the present committed to the doctrine that there is no liability on the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function."

"The court is equally committed to the doctrine that if the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable."

The opinion then gives examples of what is a proprietary and what is a governmental function:—

"First of all, let us ascertain the tests whereby these distinctions are made. In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary.

"Another familiar test is whether the act is for the common good of all the people of the state, or whether it relates to special corporate benefit or profit. In the former class may be mentioned the police, fire, and health departments, and in the latter class utilities to supply water, light, and public markets. Authorities may be found in abundance to establish the immunity from liability in the former class of cases, and to establish the liability in the latter class of cases."

How do the tests in the Arbenz case apply to the instant case? Admittedly, there is no statutory **obligation** imposed upon a municipality to operate a parking garage, nor does the operation of a parking garage

fall into the same type of function as police, fire and health departments, but rather such garage is clearly a function similar to "utilities to supply water, light, and public markets." Admittedly, under the Rhodes case, supra, the operation of a parking garage is a "public purpose" but it is not a governmental function.

Is the Arbenz case still the law in Ohio? A careful search reveals that the case has never been overruled by the Ohio Supreme Court.

In an article published in 1948 in the Ohio State Law Journal, Vol. 9, page 377, the then Secretary of the College, Professor Robert Hunter, and Mr. Ralph E. Boyer made an exhaustive review of the problem of tort liability of local governments in Ohio. At page 377, the article states:

"The inequities of the immunity doctrine have been plainly portrayed and adequately condemned by many authorities, but the traditional concept of sovereign freedom from suit is not entirely friendless. There is considerable disagreement as to the extent to which the immunity should be swept away and as to the liability that should replace it."

The article goes on to point out the traditional distinction between governmental and proprietary function and to examine numerous Ohio cases. However, in the conclusion, see p. 406, et seq., the following statements are made:

"The foregoing survey of the Ohio law of tort liability of local governments should make one thing, if nothing else, clear; there is no definite pattern which may be traced through the cases and statutes.

    \*        \*        \*        \*        \*

"If the choice, then, for practical purposes becomes one of leaving the injured person uncompensated in whole or in part or of placing the loss on the public body, the answer would seem to be easy.

    \*        \*        \*        \*        \*

"It is difficult to believe that there are no better reasons which account for the fact that we still tolerate a policy of leaving deserving claimants uncompensated if their injuries are caused by public servants."

A very interesting case, and one with which this court is in complete agreement, is the case of **Gorsuch v. Springfield (City), 43 Abs 83,** decided in March of 1945 by the Second District Court of Appeals. Certain of the headnotes in that case read as follows:

2. Ohio is definitely committed to the doctrine that except for the provisions of §3714 GC, there is no liability on the part of a municipality in action for tort if the function exercised by the municipality at the time of an injury was a governmental function, but the doctrine is equally well established that if the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable in tort.

3. The maintenance and operation of a municipal golf course and club house at the election of the city in a municipal park by a golf commission of which the park superintendent was an ex-officio member, whereby the city was benefitted by revenue in the nature of privilege

fees, etc., with which to make permanent improvements in the park without a levy of taxes for such purpose, is a private and proprietary function as a matter of law under clear and uncontradicted evidence.

The case of Broughton v. City of Cleveland cited in defendant's memo is a typical example of the disagreement which exists in the minds of the members of the Supreme Court. The question in the Broughton case was whether or not the collection of garbage is a governmental or proprietary function of government.

In the opinion, Judge Zimmerman reviews the entire problem of tort liability of municipal government and in the following language raises the question as to the correctness of the Ohio Supreme Court's position:

"The generally recognized rule that a municipality is not liable for torts committed by its employees in the exercise of a function of the municipality which is governmental in character has been subject to sharp criticism. It is argued that such rule having its origin in the ancient and obsolete maxim that "the king can do no wrong" has no place in this modern day with its enlightened sociological concepts and governmental changes, and that the rule of nonliability is unfair and unjust in that the burden of damages resulting from the tortious or wrongful acts of the government should be removed from the person who sustains them and cast upon the whole community comprising the government, which could bear the loss with little hardship or inconvenience, and ought to do so. It must be conceded that this approach is not without logic and force."

However, in a 5 to 2 decision, the Court held that garbage collection by a city was a governmental function. Judge Taft in the dissenting opinion points out that the Ohio Supreme Court has repeatedly held that the operation, maintenance and repair of sewers after their construction is a **proprietary** function and, therefore, the cities are liable for the negligence of their employees in connection with such work. Judge Taft fails, as does this Court, to see a distinction between garbage collection and the maintenance of a sewer system insofar as governmental or proprietary function is concerned. This Court is conscious of the fact that the correction of the ridiculous situation which exists in Ohio on the question of tort liability of municipalities rests primarily with the Legislature. However, it is the humble opinion of this Court that the time is long over due when the Supreme Court should do more than concede that the argument that "the rule of nonliability is unfair and unjust" and "is not without logic and force" and act affirmatively to decide, in a proper case, that "the whole community comprising the government" ought to bear the loss suffered by an innocent person damaged by the negligence of an employee of a municipal government.

This Court has read all of the cases cited by Judge Zimmerman at p. 30 in the Broughton case, supra, and is convinced that none of them are controlling in the instant case.

Here we have what is ordinarily a private business being operated by government. It is conceded that a fee is charged for parking; that tremendous receipts are taken in yearly, and that

the garage is run as a business. Surely in view of the seriousness of the traffic problem in our modern society, the operation of a parking garage has a "public purpose," but it is not a governmental function.

Upon the authority of the Arbenz and the Gorsuch cases, the motion is overruled.